## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**LAGRANT GREER**

      **Movant,**

                               **Case No. 5:18-cv-00387**

**v.**                               **Criminal Case No. 5:14-cr-00202**

**UNITED STATES OF AMERICA**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 46), and Respondent's Answer and Motion to Dismiss. (ECF No. 82).[1] This matter is assigned to the Honorable Irene C. Berger, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having determined from a thorough review of the record that Movant is not entitled to relief under 28 U.S.C. § 2255, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **DENY** Movant's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255; **GRANT** the Motion to Dismiss; **DISMISS** this civil action, with prejudice; and **REMOVE** this matter from the docket of the Court.

---

[1] The citations in this PF&R reference Movant's criminal case: *United States v. Greer*, No. 5:14-cr-00202 (S.D.W. Va. 2014).

## I.    <u>Introduction</u>

On September 23, 2014, a federal grand jury sitting in the Southern District of West Virginia returned an indictment that charged Movant, Lagrant Greer ("Greer"), with two counts of knowingly and intentionally distributing a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1). On November 14, 2014, Greer entered into a written plea agreement with the United States. (ECF Nos. 23, 24, 25). Under the terms of the agreement, Greer was to enter a guilty plea to one count of the indictment. (ECF No. 25 at 1). In return, the United States would dismiss the second count and would refrain from filing an information under 21 U.S.C. § 851, seeking a lengthier statutory sentence. (*Id.*). Greer acknowledged that the plea agreement exposed him to a potential maximum sentence of 20 years in prison. (*Id.* at 2). The plea agreement contained a waiver clause whereby Greer agreed to "knowingly and voluntarily" waive his right to appeal his conviction "on any ground whatsoever," except for a claim that his sentence exceeded the statutorily permitted maximum sentence. (*Id.* at 4). The agreement further provided that if either party failed to abide by the terms of the agreement, the agreement could be voided. (*Id.* at 5). In an attached stipulation of facts, Greer admitted that on September 3, 2014, he distributed a quantity of heroin in the Southern District of West Virginia to a confidential informant working with law enforcement officials. (*Id.* at 7).

Greer's plea hearing was held on November 14, 2014, in the United States District Court for the Southern District of West Virginia ("the Court"). (ECF No. 51). After initial questioning, the Court determined that Greer was competent to enter an informed guilty plea. (*Id.* at 4). The Court asked Greer if he was satisfied with his attorney's representation, and Greer replied in the affirmative. (*Id.*). At the request of the Court, counsel for the United States then summarized the terms of the plea agreement, and Greer

asserted that he understood those terms. (*Id.* at 5-10). Greer described the factual basis for the crime, confirming that he sold heroin to the informant. (*Id.* at 13). The Court asked Greer if he understood that by pleading guilty, he exposed himself to a potential sentence of 20 years in prison, and Greer acknowledged his understanding. (*Id.* at 17). Greer further affirmed that he knew he might be sentenced as a career offender pursuant to the United States Sentencing Guidelines ("Guidelines"), and that the sentence he ultimately received might differ from any estimate provided by his attorney. (ECF No. 51 at 19-20). The Court asked Greer if he was aware that his plea agreement contained an appellate waiver and that, because the Court did not plan on imposing a sentence which was unlawful, the appellate waiver would result in Greer forfeiting his "right to appeal your conviction and sentence for all intents and purposes." (*Id.* at 22). Greer confirmed that he had discussed the effect of this waiver with his attorney, and that he still wished to plead guilty. (*Id.* at 22-23). Greer acknowledged his understanding that in the event he did decide to file an appeal, he must do so within 14 days of his sentence being imposed. (*Id.* at 24). After questioning Greer further regarding his knowledge of the rights he was forfeiting and the voluntariness of his plea, the Court accepted Greer's guilty plea. (*Id.* at 24-29).

Greer's sentencing hearing was held on February 25, 2015. (ECF No. 52). The Court asked Greer if he had the opportunity to discuss the contents of the Pre-Sentence Report ("PSR") with his attorney prior to the hearing, and if he understood the contents of that report. Greer answered both questions affirmatively. (*Id.* at 3). The Court asked Greer directly if he had "any objection to the facts contained in the Pre-Sentence Investigation Report." Greer answered "[n]o, ma'am." (*Id.* at 4). Greer again confirmed that he was "completely satisfied" with the performance of his attorney. (*Id.*).

In calculating Greer's applicable Guidelines sentence range, the Court noted that the crime of conviction carried a base offense level of 18. (*Id*. at 6). The Court concluded that Greer met the criteria outlined in Section 4B1.1(a) of the Guidelines, and thus qualified as a career offender. (*Id*.). The Court based this determination on "any two" of Greer's prior convictions for "first-degree robbery, 1992; possession with intent to distribute marijuana in 2003; and possession with intent to distribute heroin in 2014." (*Id*.). The application of the career offender enhancement increased the offense level to 32. (*Id*.). Greer received a three-level decrease in his offense level due to his acceptance of responsibility and timely guilty plea, bringing his final offense level to 29. (*Id*. at 6-7). Given Greer's criminal history category of VI, the applicable Guidelines range was 151-188 months in prison. (ECF No. 52 at 8).

Following the Court's determination of Greer's Guidelines sentence range, Greer's counsel asked the Court to consider a downward departure, granting Greer a lighter sentence due to the limited scope of Greer's drug trafficking offense and his social history. (*Id*. at 12-14). In assessing the appropriate sentence for Greer, the Court pointed to the PSR, which revealed "[h]is criminal history includes convictions for possession with intent to deliver cocaine in 1989; possession of cocaine in 1990; first-degree robbery in 1992; possession with intent to distribute marijuana in 2003; possession with intent to distribute a controlled substance, heroin, in 2014." (*Id*. at 14-15). The Court concluded that Greer should be sentenced to 151 months in prison with a three-year term of supervised release. (*Id*. at 19). The Court found this sentence to be reasonable, and a downward departure from the Guidelines to be unwarranted, due to Greer's extensive criminal history, the serious nature of the crime, and the fact that Greer had committed the crime of conviction while on probation for a previous offense. (*Id*. at 20-22). The Court

reminded Greer that if he wanted to appeal this sentence, he had to do so within 14 days of its entry. (*Id.* at 23). The Court then dismissed Count Two of the indictment pursuant to a motion by the United States. (*Id.* at 24). Judgment was entered on February 26, 2015. (ECF No. 38). Greer did not file an appeal.

On May 13, 2015, Greer sent a letter to the Clerk of Court requesting the docket sheet for his criminal case. (ECF No. 42). That same day, the Clerk of Court sent a reply, providing Greer with his docket sheet. (ECF No. 43). On August 21, 2015, Greer submitted a *pro se* Motion for a Modification or Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2). (ECF No. 44). In the motion, Greer indicated that he was currently serving a sentence of imprisonment, which qualified for a reduction under Amendment 782 to the Guidelines. (*Id.* at 1). Greer requested an attorney be appointed to represent him. (*Id.*). On September 14, 2015, the Court denied Greer's motion, explaining that he was not entitled to a sentence reduction, because Amendment 782 did not apply to the career offender guidelines under which he was sentenced, and, in any event, at the time of Greer's sentencing, the two-level reduction provided by Amendment 782 was already incorporated into the Guidelines range used by the Court. (ECF No. 45 at 1-2).

On February 22, 2018, Greer filed the instant § 2255 motion. (ECF No. 46 at 14). In the motion, Greer asserts that his attorney failed to file an appeal, despite Greer's express request that he do so. (*Id.* at 13). Greer filed a contemporaneous Memorandum of Law in which he states that he asked his attorney to appeal his conviction on the ground that Greer was improperly designated as a career offender. (ECF No. 47 at 5-7). Greer believes that the conviction he obtained in New Jersey for possession of heroin did not qualify as a predicate offense for the purposes of the career offender designation, and if his attorney had appealed on this basis, the appellate court would have found Greer

actually innocent of his sentence. (ECF No. 47 at 5-8). Greer asserts that after "inquiring with inmates in prison not over 30 days ago," he realized that he should file the instant § 2255 motion in order to rectify this violation of his right to effective assistance of counsel. (*Id.* at 9).

Greer attached a declaration to his § 2255 motion in which he asserts that "during the conclusion of [his] Sentencing hearing," Greer informed his attorney he was not a career offender and asked his attorney to file a notice of appeal so that Greer might challenge his sentence on that basis. (*Id.* at 10). Greer alleges that his counsel agreed to file the notice of appeal and to contact Greer as soon as it was filed. (*Id.*). Greer indicates that he "waited on counsel," and then attempted to contact counsel by calling his office, but was unable to reach him. (*Id.*). Greer asserts that after "talking to other inmates about the processing of an appeal process time line," he was informed he should file the instant motion. (*Id.*).

On April 25, 2018, Respondent submitted a Response to Greer's § 2255 motion, requesting that the motion be denied and the case dismissed, because Greer failed to file it within the one-year deadline imposed on § 2255 motions. (ECF No. 55 at 2). On May 25, 2018, Greer responded to the request for dismissal, disputing Respondent's contention that his motion was untimely filed. (ECF No. 56). Greer argues that he is entitled to equitable tolling in view of his attorney's agreement to file the appeal. Greer contends that he waited for information on the status of the appeal, as instructed by his attorney, but did not receive any updates. (*Id.* at 4). Greer reiterates that he attempted to contact his attorney for a status report, but had no success. Greer emphasizes, however, that "at no time" did his attorney refuse to file the appeal. (*Id.*). Greer contends that he "has been diligently pursuing challenging the sentence imposed by the District Court …

from day one when the sentence was imposed." (*Id*. at 6). He argues that he told counsel to file the appeal, and then "made several calls to counsel's office and counsel did not return any of [Greer's] calls." (*Id*.). Greer asserts that it would be "unconscionable" to dismiss his petition under these circumstances. (*Id*. at 7).

On September 6, 2018, the undersigned issued an Order directing Greer's prior counsel, G. Todd Houck ("Houck"), to file an affidavit responding to Greer's contention that Houck failed to file an appeal after having been directed to do so. (ECF No. 59). On September 17, 2018, Houck submitted an affidavit in response to the Order. (ECF No. 61). In the affidavit, Houck contests Greer's version of events. Specifically, Houck denies that Greer ever asked him to file an appeal. (*Id*. at 2). Houck indicates that he had eight consultations with Greer and advised him early on that his sentence would be significant, because of his prior criminal history. Houck estimated that Greer would likely face a sentence of 151-months' imprisonment and could receive a lengthier sentence if the United States filed an information under 21 U.S.C. § 851. (*Id*.). Houck states that he reviewed the PSR with Greer, and Greer did not object to any aspect of the report. (*Id*.). Houck asserts that it was his general practice to always inform a defendant regarding his right to appeal, and that he continued this practice with respect to Greer. (*Id*.). Houck contends that "[a]fter sentencing, [Greer] never requested undersigned to file an appeal on any issue." (*Id*.). Houck adds that he did not receive any correspondence from Greer, or anyone speaking on Greer's behalf, until he received notice of the *pro se* motion to reduce sentence filed in August 2015. (*Id*.). Houck asserts that he reviewed his office's telephone records "through 2016" and they did not reflect that Greer, or anyone speaking on his behalf, attempted to contact Houck. (*Id*.).

On October 31, 2018, Greer's mother, Rosetta Greer, and Greer's wife, Jessie Greer,

submitted declarations in support of Greer's petition. (ECF Nos. 62, 63). Rosetta Greer states that, after the sentencing hearing, Greer asked her to contact Houck in order to discover the status of the appeal process. (ECF No. 62 at 1). Rosetta Greer asserts that she attempted to call Houck's office, but reached his secretary, who took a message. (*Id.*). Rosetta Greer continued to call Houck's office numerous times, but never spoke with him, and Houck never responded to her many messages. (*Id.*). Jessie Greer describes a similar experience, saying she attempted to reach Houck regarding Greer's appeal on numerous occasions, but Houck was nonresponsive. (ECF No. 63 at 1). Jessie Greer also asserts that she told Houck to appeal Greer's sentence both before the sentencing hearing, and immediately after the sentencing hearing. (*Id.*). She states that Houck assured her he would do so. (*Id.*).

On March 21, 2019, the undersigned issued an Order finding that, as there was a factual dispute regarding Greer's request for an appeal, an evidentiary hearing was necessary. (ECF No. 70). On April 10, 2019, the undersigned appointed Criminal Justice Act Panel ("CJA") attorney, Sebastian Joy, to represent Greer during the course of the evidentiary hearing, which was scheduled for May 14, 2019. (ECF No. 73).

At the evidentiary hearing, Greer's counsel stated that he had intended to call Jessie Greer as a witness, but she was not present due to illness. (ECF No. 80 at 3). Rosetta Greer was present at the hearing, but was not called to testify. (*Id.* at 7). Greer was sworn in and testified that, immediately after his sentencing hearing concluded, while still seated at the table with Houck, he informed Houck that he did not believe he should have been designated a career offender and wished Houck to appeal on this ground. (*Id.* at 11). Greer asserted that Houck responded "okay." (*Id.*). Greer stated that he reiterated this request to Houck again shortly after sentencing while being held in a holding cell in the

courthouse. (*Id.* at 12-13). On that occasion, Greer informed Houck that he was "dissatisfied" with his sentence and wanted to appeal. (ECF No. 80 at 13). Houck told Greer he would do so, but did not inform Greer how long the process would take. (*Id.*).

Greer testified he next saw Houck "a couple days" after the sentencing hearing, while Greer was incarcerated at the Southern Regional Jail in Beaver, West Virginia. (*Id.* at 13-14). Greer saw Houck while Houck was waiting to speak with a different client. (*Id.* at 14). Greer testified that he spoke with Houck regarding his appeal, and Houck again informed Greer that he would file the appeal as requested, and would let Greer know when it had been filed. (*Id.* at 14-15, 17). Greer explained that he wanted Houck to appeal because his prior conviction in New Jersey was listed in the PSR as being a conviction for possession with the intent to distribute controlled substances, when in reality, it had been a conviction for mere possession. (*Id.* at 15). Greer testified that after this conversation, he did not speak with Houck again and was waiting for his appeal to be filed. (ECF No. 80 at 15-16).

Greer explained that he discovered his appeal had not been filed as promised after "[t]alking to some people about my case, talking to some people about the law, how long it takes for the appeal process." (*Id.* at 16). Greer said in the course of these conversations he was informed he should find out if there was any "activity going on in my case." (*Id.*). Greer stated that after a "guy" looked into the matter and discovered there had been no appeal filed, Greer submitted the instant § 2255 motion. (*Id.*). Greer asserted that he did not contact Houck upon discovering that the appeal had not been filed, but did ask his family to contact Houck. (*Id.*).

Greer testified he first informed Houck regarding the error in the PSR before sentencing, but Houck told Greer "that the situation that I wanted to argue was in my

[PSR], so I really didn't have no argument." (ECF No. 80 at 16-17). Nonetheless, when Greer raised the issue again after sentencing, Houck told Greer he would appeal the issue. (*Id.* at 17).

On cross examination, Greer admitted that he had said he had no objection to the PSR when asked at the sentencing hearing. Furthermore, he had not raised the issue of being improperly designated as a career offender, and had confirmed that he was satisfied with Houck's representation. (*Id.* at 19-20). Greer testified that he did not remember being informed by the Court at the sentencing hearing that he had 14 days to submit a notice of appeal before the right to file expired. (*Id.* at 23). On re-direct examination, Greer asserted that he believed Houck would file the appeal as directed, and "noticed that appeals take a long time. So I was sitting being patient, waiting." (*Id.* at 26).

Following Greer's testimony, Houck took the stand. (ECF No. 80 at 31). Houck testified that he had practiced law for nearly 30 years. (*Id.* at 33). His experience was primarily as a "plaintiff-oriented attorney," but he also has extensive experience as a criminal law attorney, spending 12 years as an elected prosecutor. (*Id.* at 34). Houck was serving as a CJA attorney when he was appointed to represent Greer. (*Id.* at 34-35). Houck stated it was clear from the beginning of the case that Greer would likely be sentenced as a career offender, and he relayed that information to Greer early on in his representation. (*Id.* at 35-36).

Houck testified that he made a general practice of advising clients who agreed to a plea deal containing a plea waiver that, while the waiver "kind of takes the guts out of any appeal they may have in the future," they still had the right to file an appeal. (ECF No. 80 at 38). Houck stated that he informed Greer the guilty plea would expose him to a potential sentence of 20 years, but if the Court chose to abide by the Guidelines, the

sentence would likely be 12-15 years in prison. (*Id.* at 39). Houck explained that he generally would go over a client's appellate rights both before and immediately after sentencing. (*Id.* at 39-40). Houck testified that Greer never requested an appeal. (*Id.* at 40). After sentencing, Houck did not hear from, or about, Greer again until he received notice of Greer's Motion to Reduce Sentence via the Court's electronic docketing system. (*Id.*). Houck believed that rather than desiring an appeal, Greer "seemed a little bit relieved at the sentencing because the Judge had chosen to take the low end of the guidelines. ... And he -- him and his girlfriend both told me that they could do that, they could, you know, they could have their life after this sentence." (*Id.* at 40-41). Houck reiterated that Greer never requested an appeal and further testified that Greer had additionally never expressed reservations with respect to the PSR, or the career offender designation. (ECF No. 80 at 41-42). Houck stated that the notes he took during the course of his representation of Greer also corroborated that Greer had no objection to the PSR. (*Id.* at 42). Houck testified that his office never received any calls from individuals acting on Greer's behalf after the sentencing hearing. (*Id.* at 44). Houck stated that if he had received calls from family members asking for an appeal on Greer's behalf, he would have taken note of it and spoken to Greer personally about the request. (*Id.* at 47).

On cross-examination, Houck admitted that he had never filed an appeal for a criminal defendant, because he had never had a client who requested one. (*Id.* at 51). Houck additionally explained that when he stated in his affidavit that he had reviewed the office telephone call records "through January, 2016," he meant that he started from the date of his affidavit and went backward in his records through January 2016. (*Id.* at 54). Houck had been unable to review records of telephone calls made prior to that date, because before January 2016, he did not "have a centralized storage system" for telephone

calls. (*Id.* at 54-55).

Following the hearing, the undersigned issued an Order directing Houck to provide a copy of his notes made during the course of representing Greer for *in camera* review. (ECF No. 75 at 1). Following review and redaction of the notes, the undersigned provided a copy of the notes to the parties. (ECF Nos. 79, 79-1). They were also given additional time to file supplemental briefs in support of their positions. (*Id.* at 1-2).

On July 16, 2019, Greer, through counsel, submitted a Reply to Respondent's earlier request for dismissal. (ECF No. 81). In the Reply, Greer claims that "[i]t is rather clear from the testimony of both [Greer] and Houck that there was a fatal error in communication between the parties." (*Id.* at 4). Greer believes this miscommunication resulted in "real prejudice," as an appeal he requested was not filed. (*Id.*). Greer asserts that it is "uncontroverted that [Greer] asked Houck to file a notice of appeal on his behalf," and "[i]t is also uncontroverted that a Notice of Appeal was not filed." (*Id.* at 7). As the law is clear that an attorney's disregard of a client's express request for an appeal is *per se* constitutionally ineffective representation and results in prejudice, Greer contends, he is entitled to relief. (*Id.* at 5-7). For relief, Greer requests that this Court vacate his sentence and schedule a new sentencing hearing. (*Id.* at 7).

Respondent issued a Response to Greer's Reply on July 29, 2019. (ECF No. 82). In the Response, Respondent disputes Greer's contention that he is entitled to relief, arguing that Greer has failed to establish he asked Houck to file an appeal. (*Id.* at 5). Respondent claims that Greer has provided "no evidence, beyond his own, self-interested testimony and the affidavits of biased family members, that he notified his counsel of his desire to appeal." (*Id.* at 5-6). Respondent contrasts this "self-serving" testimony with Houck's affidavit, notes, and testimony to the contrary, and the fact that it would have been

illogical to appeal on the basis that Greer identifies, and concludes that Greer has not successfully established he requested an appeal. (*Id.* at 5-11). Respondent argues that, based on Greer's failure to establish his request for an appeal, he is additionally unable to establish his right to equitable tolling. (*Id.* at 11-12). Respondent accordingly requests that Greer's § 2255 motion be dismissed. (*Id.* at 12-13).

Greer filed a Sur-Reply to Respondent's Response on August 13, 2019. (ECF No. 83). Greer claims that by relying on Houck's extensive experience as support for the argument that his testimony is more credible than Greer's, Respondent overlooks the fact that Houck admitted he had never filed an appeal in a federal criminal case. (*Id.* at 1-2). Greer alleges that "[i]t is overwhelmingly clear that Houck was not ever aware of his obligation to file a Notice of Appeal and has been deficient in his representation of the defendant under the standards set out by the United States Supreme Court…" (*Id.* at 3). Greer again requests that his sentence be vacated. (*Id.*).

## II.    **Standard of Review**

Greer filed the instant § 2255 motion in February 2018. (ECF No. 46). A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02CR65, Civ.A. 2:05CV91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Pursuant to

the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.  Discussion

### A. Statute of Limitations

Claims under 28 U.S.C. § 2255 are governed by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a one-year statute of limitations. Under the AEDPA, a § 2255 motion must be filed within one year of the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). In this case, Greer's judgment of conviction was entered on February

26, 2015. (ECF No. 38). Under Rule 4(b) of the Federal Rules of Appellate Procedure, Greer had 14 days to file a notice of appeal, but he did not do so. Therefore, Greer's judgment of conviction became final on March 12, 2015, when the relevant time period expired. Greer did not file a § 2255 motion until February 22, 2018, nearly three years later. Consequently, Greer's motion is time barred under § 2255(f)(1), unless he can demonstrate that he is entitled to equitable tolling, or that one of the other subsections of § 2255(f) applies to his case.

Greer does not contest Respondent's assertion that Greer's § 2255 motion is untimely under § 2255(f)(1); however, he does argue that he is entitled to equitable tolling of the limitations period. (ECF No. 56 at 5-6). Greer argues that he "has been diligently pursuing challenging the sentence imposed by the District Court … from day one when the sentence was imposed." (*Id.* at 6). He claims that he waited for counsel to file an appeal and only belatedly learned that the promised appeal was not filed. Greer alleges that he did not realize the need to file a § 2255 motion until he conferred with other inmates "not over 30 days" before filing the instant action. (ECF No. 47 at 9-10). Greer contends that it would be "unconscionable" to enforce the statute of limitations under these circumstances. (ECF No. 56 at 7).

### 1. Equitable Tolling

The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has long recognized that the AEDPA statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The Supreme Court of the United States ("Supreme Court") established in *Holland v. Fla.*, 560 U.S. 631,

649 (2010), that equitable tolling should only be extended when a habeas petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). The question of whether equitable tolling applies hinges on the particular circumstances of each case. *Campbell v. United States*, No. CIV. CCB-13-670, 2013 WL 5945656, at *1 (D. Md. Nov. 5, 2013) (*See Harris v. Hutchinson,* 209 F.3d 325, 328 (4th Cir. 2000)).

Here, Greer argues that he is entitled to equitable tolling, because he believed his attorney had filed an appeal, and he simply had to wait for its resolution. Greer asserts that after being told by his counsel that an appeal would be filed and Greer would be notified upon its filing, Greer "waited on counsel to contact but to no avail." (ECF No. 56 at 4). Greer explained that he realized his appeal had not been filed after "talking to some people about my case, talking to some people about the law, how long it takes for the appeal process." (ECF No. 80 at 16). Greer was told to look into whether there had been any activity in his case, following which "a guy reached out and tried to find out." (*Id.*). When this individual discovered that there had been no activity on Greer's docket, Greer filed the instant § 2255 motion. (*Id.*). Greer stated that he only belatedly investigated whether an appeal had actually been filed, because he believed Houck would file an appeal as requested, and he "noticed that appeals take a long time. So I was sitting being patient, waiting." (*Id.* at 26). By the time Greer investigated the matter, nearly three years had passed since his judgment became final.

Based on this fact scenario, Greer is not entitled to equitable tolling for two reasons. First, Greer fails to satisfy the diligence requirement of equitable tolling. Greer

and his family members assert, without supporting evidence, that they made multiple calls to Houck regarding Greer's appeal. Although Greer's family members received no response from Houck, Greer made no effort to check the status of the appeal on his own. Greer attempts to explain his inaction by stating that he believed an appeal was pending and that appeals take a long time; however, this statement is undermined by Greer's contact with the Court in May 2015. On May 13, 2015, Greer wrote to the Clerk of Court requesting a copy of the docket sheet in his case. (ECF No. 42). On the same day, the Clerk sent the sheet to Greer. (ECF No. 43). The docket sheet plainly showed that no Notice of Appeal had been filed. Indeed, the docket sheet reflected that, other than the filing of the PSR, **nothing** had occurred in Greer's case between entry of his judgment on February 26, 2015 and entry of the execution of judgment on March 23, 2015. Greer knew that he had 14 days to file an appeal, because the Court advised him of the time frame on two separate occasions—once at his plea hearing and once at sentencing—and on both occasions, Greer acknowledged his understanding of the deadline. (ECF Nos. 51 at 24; 52 at 23).

In addition, Greer's next move is very telling as to his belief that an appeal was pending and that Houck continued to be his lawyer. Instead of writing a letter to Houck or to the Court, inquiring as to the absence of a Notice of Appeal on the docket sheet, three months later Greer filed a *pro se* motion seeking a reduction of his sentence under 18 U.S.C. § 3582(c)(2). (ECF No. 44). In that motion, Greer asked the Court to appoint him an attorney. (*Id*.). Certainly, if Greer believed that an appeal was pending and that Houck was still his attorney, he would not have filed the *pro se* motion or asked for an attorney. Greer plainly was not waiting for word from Houck about his appeal when he filed this document.

Assuming for the sake of argument that Greer's receipt of the docket sheet in May 2015 did not alert him to the absence of an appeal, Greer continued to wait and took no action to ascertain the status of his appeal for nearly three years. While Greer invested the time to research and file a *pro se* motion requesting the reduction of his sentence and appointment of counsel, (ECF No. 44), he did nothing to confirm that his appeal was actually pending. This is true despite the fact that his attorney had, as Greer claims, entirely ceased communicating with Greer and his family. *See Carvlin v. United States,* No. 3:09-CR-00036, 2018 WL 5078351, at *2 (M.D Pa. Oct. 18, 2018) (collecting cases that hold that a movant does not act with due diligence when he allows extended periods to pass after request for appeal before investigating the status); *Tores-Flores v. United States*, No. 7:10-CR-70-FL-2, 2015 WL 331701, at *8 (E.D.N.C. Jan. 23, 2015) ("Petitioner's lack of diligence is apparent from his failure to inquire about the status of his appeal for over eight months after the judgment became final, especially given that the court explained to him at his sentencing hearing that he had 14 days after entry of the judgment to file an appeal."); *Van Buren v. United States,* No. CIVA 4:05CV103, 2006 WL 3760064, at *3 (E.D. Va. Dec. 18, 2006) ("The fact that a petitioner was operating under the mistaken assumption that his appeal was pending, and the fact of his status as a federal prisoner proceeding *pro se*, are insufficient grounds to invoke equitable tolling.") (citations omitted). Greer's failure to inquire about the status of his appeal for nearly three years—especially in light of the docket sheet and his family's alleged difficulties in contacting Houck—demonstrates a definite "lack of reasonable diligence" by Greer in pursuing his rights.

In addition, Greer fails to establish the "extraordinary circumstances" requirement of equitable tolling. The extraordinary circumstances "prong of the equitable tolling test

is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [his] control." *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016). "Extraordinary circumstances" exist when an "external obstacle" not within the party's control "stood in [its] way," causing delay. *Id*. Garden variety attorney malfeasance is insufficient to warrant equitable tolling. *Holland*, 560 U.S. at 651-52. While an criminal attorney's abandonment of his client, without notice, may constitute extraordinary circumstances, *see Maples v. Thomas,* 565 U.S. 266, 281-82 (2012), the facts of this case do not substantiate that such a situation occurred with Greer.

As previously noted, other than self-serving statements by Greer and his family members, there is no evidence that they made any effort to contact Houck after the sentencing. Greer did not produce any letters or emails to Houck, or any correspondence to the Court requesting information on his appeal. *See Campbell v. United States*, No. CIV. CCB-13-670, 2013 WL 5945656, at *2 (D. Md. Nov. 5, 2013) (finding that movant failed to justify the application of equitable tolling where he offered no evidence to support his conclusory allegation that counsel abandoned him, and failed to show that counsel somehow hindered movant from filing a § 2255 motion as a *pro se* litigant). If, in fact, Houck was never available to speak with Greer's family members on the telephone and ignored messages taken by his secretary, the next logical step would have been for Greer to write to Houck, and his family members to either write or visit Houck's office. *Milliron v. Director TDCJ-CID,* 75 F. Supp. 3d 701, 70304 (E.D. Tex. 2014) (holding that once petitioner has a reason to suspect there is a communication problem with counsel, petitioner must take the necessary steps to protect his rights.). Greer does not allege that he or any of his family members took steps beyond placing a few unanswered telephone calls, and Houck testified that there is no record of any telephone calls or correspondence

from Greer, or on his behalf, after the sentencing hearing.

In addition, Houck took detailed notes of his communications with Greer and met with him at least eight times before the judgment was entered. It defies logic that Houck, who was conscientious throughout the case, would suddenly abandon his client after sentencing by completely ignoring calls and messages left by Greer and his family. Similarly, it defies logic to conclude that Greer believed Houck was still his attorney in May 2015, when Greer explicitly asked for the *appointment of counsel* to prosecute a post-conviction motion. Finally, even if Houck did abandon Greer, Greer should have become aware of the abandonment shortly after he received a copy of the docket sheet, showing that no appeal had been instituted. At that time, Greer had almost ten months left in which to file a § 2255 motion asserting ineffective assistance of counsel.

Given that Greer has failed to demonstrate reasonable diligence in the pursuit of his post-conviction remedies and further fails to show extraordinary circumstances that hindered his ability to proceed with those remedies, the undersigned **FINDS** that Greer is not entitled to equitable tolling; therefore, his motion is untimely.

### 2. Section 2255(f)(4)

Greer's sole argument in favor of a merits review of his otherwise untimely § 2255 motion is the doctrine of equitable tolling. As previously explained, when applied, equitable tolling extends the AEDPA's one-year statute of limitations. Although not raised by Greer, some courts have also considered claims similar to the one asserted by Greer under 28 U.S.C. § 2255(f)(4). *See, e.g., Wims v. United States*, 225 F.3d 186, 189-90 (2d Cir. 2000) (claim that an attorney's failure to file an appeal delayed § 2255 petition should be considered under § 2255(f)(4)). In contrast to equitable tolling, § 2255(f)(4) does not extend the one-year window for filing § 2255 motions; instead, it provides a different

triggering event for determining when the one-year limitations period begins to run. *Hannigan v. United States*, 131 F. Supp. 3d 487-88 (E.D.N.C. 2015).

Section 2255(f)(4) provides that the new limitations period begins to run only when the facts supporting the § 2255 motion "could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2255(f)(4); *also See Van Buren,* No. CIVA 4:05CV103, 2006 WL 3760064, at *3 ("Accordingly the statute of limitations would start to run from the date on which Petitioner's counsel's failure to file a timely appeal could have been discovered by Petitioner through the exercise of due diligence."). When "the petitioner alleges that his limitations period should be reset because he did not know that his attorney had failed to file a notice of appeal on his behalf, '[t]he proper task ... is to determine when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed.'" *Canady v. United States,* No. 4:09CR10, 2014 WL 12521300, at *2 (E.D. Va. Apr. 14, 2014) (quoting *Wims*, 225 F.3d at 190)."It is the petitioner's burden to prove that he or she exercised due diligence." *United States v. Crawley*, No. 3:07CR488, 2012 WL 32402, at *2 (E.D. Va. Jan. 5, 2012) (citing *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir.2006)). The imposition of a due diligence condition "at least require[s] that a prisoner make reasonable efforts to discover the facts supporting his claims." *United States v. Smith,* No. 3:10CR210-HEH, 2017 WL 4249632, at *3 (E.D. Va. Sept. 25, 2017) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008). Accordingly, the limitations period provided by § 2255(f)(4) does not begin to run "from the <u>actual</u> discovery of facts supporting a collateral attack, but rather from the date on which those facts <u>could have been</u> discovered through the exercise of due diligence." *Cargill v. United States*, No. CR RWT-08-0204, 2010 WL 11606804, at *2 (D. Md. Feb. 5, 2010) (emphasis in original).

In order for his motion to be timely under this provision, Greer must show that "he **could not have discovered** the facts underlying [his] claim[] by the exercise of 'due diligence' until" February 22, 2017, one year before filing the instant motion. *Rivers v. United States*, No. 2:12-CR-148-PMD, 2016 WL 7508230, at *3 (D.S.C. Mar. 21, 2016) (emphasis added). This Greer is unable to do. Even taking as true Greer's factual allegations that he asked his attorney to file an appeal and did not discover the lack of an appeal until shortly before filing the instant motion, Greer's § 2255 motion is still untimely, because he fails to show that he could not have discovered his attorney's inaction earlier if he had exercised due diligence.

The due diligence inquiry under § 2255(f)(4) "is an objective test, requiring the court to determine 'when a duly diligent person in petitioner's circumstances would have discovered that no appeal had been filed.'" *Hannigan*, 131 F. Supp. at 488 (quoting *Wims*, 225 F.3d at 190). While the due diligence test is analyzed objectively, the "inquiry is individualized and requires a court to consider the totality of the circumstances." *Id.* (citing *Aron*, 291 F.3d at 712). In considering a claim that an attorney neglected a promise to file an appeal, a court should consider "the prisoner's conditions of confinement, a prisoner's ability to communicate with the court and counsel, and communications between the prisoner and the prisoner's counsel and between the prisoner and the court." *Id.* (citations omitted). Faced with allegations similar to those in the instant action, some courts have concluded that when a petitioner bases his § 2255 motion on his attorney's failure to file an appeal, the "new fact" of the attorney's failure to file is "readily and publicly discoverable" shortly after expiration of the 14 day-period for filing a notice of appeal. *Hannigan*, 131 F. Supp. 3d at 494; *see also Owens v. Boyd*, 235 F.3d 356, 360 (7th Cir. 2000) ("'[T]he lack of [an appeal] was a matter of public record, which reasonable

diligence could have unearthed."); *Crawley*, No. 3:07CR488, 2012 WL 32402, at *3 (E.D. Va. Jan. 5, 2012) ("Counsel's failure to timely pursue an appeal was discoverable as of June 18, 2008, when it became a part of the public record.").

In this case, it is unnecessary to determine precisely when a "duly diligent person" facing the same circumstances as Greer could have discovered the fact that his attorney failed to file an appeal, because Greer clearly could have made that discovery well before February 22, 2017 if he had exercised due diligence. As noted above, in Greer's version of events, Houck told Greer he would file an appeal and then subsequently became impossible to reach by telephone. Despite obtaining a docket sheet on May 13, 2015 that showed no Notice of Appeal had been filed, Greer waited close to three years before undertaking any investigation of his appeal. Greer did not write any letters to Houck, nor did he communicate with the Court to check on the status of the appeal. Greer did write to the Court once, and he filed a *pro se* motion for a sentence reduction, but never requested in either of those documents that he be provided with an update regarding his appeal. Greer's motion for reduction of sentence was denied on September 14, 2015, yet he had no further contact with the Court until February 22, 2018, when he signed the § 2255 motion that arrived in the Clerk's office and was filed on March 5, 2018. (ECF No. 46).

Notably, although Greer raised the doctrine of equitable tolling in the memorandum supporting his § 2255 motion, he never mentioned that his family made multiple telephone calls to Houck that went unreturned. Instead, Greer indicated that "Mr. Houck stated he will file my notice of appeal with the court and he will contact me to let me know when it was processed with the court. I waited on counsel, called his office and never reached Mr. Houck." (ECF No. 47 at 10). Only after Houck filed an affidavit

stating that no request for appeal was ever made by Greer did Greer submit declarations from his mother and wife asserting that many calls were made to "Mr. Houch [sic]" regarding the appeal. (ECF No. 62, 63). These declarations provide no details regarding the alleged follow-up telephone calls, nor do they explain why Greer himself did not call or write a letter to Houck, or why no family member thought to visit Houck's office. Greer's failure to pursue the matter himself is the antithesis of due diligence. *See Hannigan*, 131 F. Supp. at 493-94 (petitioner did not demonstrate due diligence when, despite a lack of communication from attorney regarding appeal, the petitioner waited nearly three years to file a Section 2255 petition as fact that notice of appeal was not filed was readily discoverable); *see also Rivers v. United States*, No. 2:12-CR-148-PMD, 2016 WL 7508230, at *4 (D.S.C. Mar. 21, 2016) (petitioner did not demonstrate due diligence when he waited until nine and a half months after the deadline for filing a notice of appeal had expired before inquiring into status of appeal); *United States v. Carter*, No. 3:07CR230-HEH, 2013 WL 394717, at *4-5 (E.D. Va. Jan. 31, 2013) (petitioner did not exercise due diligence where, after attorney promised to appeal, he did not hear from attorney again and did not inquire into status of appeal for nine months); *Canady v. United States*, No. 4:09CR10, 2014 WL 12521300, at *3 (E.D. Va. Apr. 14, 2014) ("[A]lthough due diligence recognizes the reality of the prison system, after a certain point, due diligence requires a petitioner to check the public record or otherwise ascertain whether his appeal had ever been filed as requested."); *United States v. Dillard*, No. 4:08-CR-00029-1, 2011 WL 240605, at *2 (W.D. Va. Jan. 24, 2011) ("Petitioner did not exercise due diligence by waiting silently for six months to a year to check a public record [notice of appeal] that could be discovered with minimal effort...."); *Crawley*, No. 3:07CR488, 2012 WL 32402, at *3 ("Under the present facts a petitioner acting with reasonable

diligence would have discovered that no appeal had been filed, at the latest, within four months following the date his judgment became final..."); *Reeves v. United States*, No. 5:09-CR-204-FL, 2012 WL 1978289, at *2 (E.D.N.C. June 1, 2012) ("[H]ad petitioner exercised due diligence, he would have discovered well before expiration of the one year deadline that [counsel] had not filed the notice of appeal.").

Accordingly, the undersigned **FINDS** that Greer's motion is not timely under § 2255(f)(4), because he has failed to demonstrate that he filed the instant motion within one year of the date on which when the facts supporting his claim could have been discovered through the exercise of due diligence.

In sum, Greer filed his motion well after the one-year anniversary of his conviction becoming final, making his motion untimely under § 2255(f)(1). Greer does not identify any impediment created by the government which prevented him from filing his motion earlier, nor does he argue that his claim rests on a newly created right identified by the Supreme Court of the United States ("Supreme Court"), as required to utilize the limitations commencement periods identified in § 2255(f)(2) and (3). *See* 28 U.S.C. § 2255(f)(2)-(3). Likewise, Greer does not meet the due diligence prong of § 2255(f)(4). Therefore, as Greer filed his Section 2255 motion after expiration of the one-year period and fails to demonstrate that he is entitled to equitable tolling, the undersigned **FINDS** that Greer's motion is barred by the AEDPA's statute of limitations.

### B. Merits of claim

Assuming, *arguendo*, that Greer's § 2255 motion is not barred by the statutory period of limitations, the undersigned still **FINDS** that Greer is not entitled to relief. Greer simply has not met his burden to prove by a preponderance of the evidence that Houck neglected to file a notice of appeal after being explicitly instructed to do so by

Greer. The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. This two-prong test requires the defendant to show that his counsel's performance was objectively unreasonable, and that the defendant was prejudiced by counsel's deficient performance. *Id.*

The Fourth Circuit has long held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993); *see also United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000); *United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995).(The "failure to file a requested appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits.") This principle remains true even where a criminal defendant has accepted a plea agreement containing an appeal waiver provision, or there is a possibility that an appeal may result in the defendant receiving a higher sentence. *United States v. Glover*, 363 F. App'x 989, 990-91 (4th Cir. 2010); *United States v. Poindexter*, 492 F.3d 263, 271-73 (4th Cir. 2007); *Monroe v. United States*, No. 3:10-cv-00866, 2011 WL 7021200, at *9 (S.D.W. Va. Nov. 4, 2011), *report and recommendation adopted by* 2012 WL 112552 (S.D.W. Va. Jan. 12, 2012). If a defendant's counsel runs afoul of this rule, the proper procedure is for the district court to vacate its previous judgment, enter a new judgment from which the defendant may file an appeal, dismiss any remaining claims in the § 2255 motion without prejudice, and appoint counsel to assist the defendant on direct appeal.

*United States v. Killian*, 22 Fed. Appx. 300, 301 (4th Cir. 2001); *Aldana v. United States*, No. 1:09cv461, 2010 WL 2860527, at *2 (W.D.N.C. July 19, 2010); *see also Peak*, 992 F.2d at 42 (instructing district court to vacate movant's judgment of conviction and enter new judgment from which appeal could be taken).

Here, the undersigned held an evidentiary hearing at which both Greer and Houck testified at length. "In assessing the credibility of witnesses, trial courts consider 'variations in demeanor and tone of voice.'" *Rahman v. United States*, 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)). "In addition, '[d]ocuments or objective evidence may contradict the witness's story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Id.* (citing *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional considerations can include the witness's motive to lie and the level of detail in the witness's statements." *Id.* (citing *United States v. Wilson*, 624 F.3d 640, 665 (4th Cir. 2010)).

Greer testified that he has been incarcerated at FCI Ashland since 2015. (ECF No. 80 at 8). He acknowledged knowing, prior to his sentencing, that he would be designated a career offender. He also knew that his Guidelines sentencing range was 151-188 months. (*Id.* at 24). Furthermore, Greer recalled being told by the Court that, under the terms of the plea agreement, he was waiving his right to appeal for all intents and purposes. (*Id.* at 30*)*. However, Greer did not object to the career offender designation either before or at sentencing, even when specifically asked by the Court if he had any objections to the PSR. (*Id.* at 9, 19). Notwithstanding his lack of objection, and despite being sentenced at the low end of the Guidelines range, Greer testified that he instructed Houck to file an appeal immediately after receiving his sentence. (*Id.* at 11). In fact, Greer indicated that he asked

Houck to file an appeal even **before** being sentenced. (*Id.* at 17).  According to Greer, he wanted to file the appeal because he did not believe he should have been designated a career offender. (*Id.*). Greer stated that Houck agreed to file the appeal, so Greer waited to hear from him. Greer added that he saw Houck at the Southern Regional Jail a few days later and reiterated that he wanted to file an appeal. (*Id.* at 14). Greer indicated that this was his last conversation with Houck. (*Id.* at 15-16).

At some point after arriving at FCI Ashland, Greer testified that he learned that Houck had not filed the appeal. (ECF No. 80 at 16). Rather than trying to call Houck himself, Greer stated that he called his family and asked them to follow up with Houck. (*Id.*). Although Greer's mother was present at the evidentiary hearing, she did not testify regarding her alleged attempts to contact Houck.

After Greer's testimony, Houck was called to the witness stand. Houck testified about his 30 years of experience as an attorney, with an extensive criminal law background; including, his work as a county prosecutor and as a CJA attorney. (*Id.* at 33-34). Houck unequivocally denied that Greer requested an appeal, and stated that if Greer had requested one, Houck would have filed it regardless of his subjective views on the merits. (*Id.* at 40, 51-52). Houck recalled that from the outset of the case, he advised Greer that he would be designated a career offender and his sentence would likely range between 12 and 15 years' imprisonment if he lost at trial. He further advised that if the United States filed for an enhancement under § 851, Greer could get an additional 10 to 15 years. (*Id.* at 36).

Houck stated that he reviewed the plea agreement in detail with Greer. He explained to Greer that the appeal waiver most likely would forestall any appeal, but Greer still had the right to file one. (*Id.* at 38). He also advised Greer that the time to file an

appeal expired in 14 days, so if he wanted to file one, he would need to let Houck know within the first week after the sentencing. (*Id.* at 40). Houck testified that Greer never expressed any desire to appeal and never asked for one later. Moreover, Houck indicated that Greer never communicated dissatisfaction with his sentence, or stated that he wanted to challenge the career offender designation. (ECF No. 80 at 41). Houck confirmed that he went over the PSR with Greer during a face-to-face meeting, and Greer did not raise any objections to it. (*Id.* at 42). Houck described Greer as being somewhat relieved that the Court sentenced him to the low end of the Guidelines range. (*Id.* at 40).

When asked about Greer's family members calling his office, Houck testified that he had no record of any such contacts. (ECF No. 80 at 44). He checked back through his available telephone logs record and also reviewed his case notes, but found no evidence to support the contention that Greer's family members called and left messages. Houck testified that had a family member called him to ask for an appeal on behalf of Greer, Houck would have contacted Greer personally to discuss it. (*Id.* at 47).

On cross-examination, Houck testified that in all of his years on the CJA panel, he had never had a client ask him to file an appeal. (*Id.* at 52). He was not familiar with the practice of filing an *Anders* brief, but acknowledged that he was aware of the duty to file an appeal even if no meritorious grounds supported it. (*Id.*). Houck reiterated that neither Greer, nor Jessie Greer, requested an appeal after the sentencing hearing and confirmed that Greer did not make such a request at any time during the fourteen-day period. (*Id.* at 60). Subsequent to the evidentiary hearing, Houck provided his case notes for the Court and parties to review. (ECF No. 79). The notes do not indicate any discussion in which a request for an appeal was made by Greer, or his family members. *(Id.)*.

The testimony provided by Houck was credible, consistent, and corroborated by

the contemporaneous and detailed notes he prepared during his representation of Greer, which were void of notations substantiating that Greer sought an appeal of his sentence. (ECF No. 79-1 at 22-23). Greer's testimony, by contrast, was inherently self-serving, inconsistent, and lacked specificity. First and foremost, Greer was markedly vague regarding when, specifically, he realized that Houck had not filed an appeal. (ECF No. 80 at 16). In previous filings, Greer had indicated he made this discovery shortly before filing the instant motion. (ECF No. 47 at 9). However, at the evidentiary hearing, Greer asserted that he asked his family to contact Houck once he realized the appeal had not been filed, which was some point after he was transferred to FCI Ashland in 2015. (ECF No. 80 at 16). The declarations filed by Greer's family members, while not specific as to the timeline of their attempts to reach Houck, seem to suggest that their attempts to reach him occurred not long after the sentencing hearing, which would place Greer's realization of his attorney's failure much earlier than initially claimed. (ECF Nos. 62, 63, 78-1). Thus, the timeline provided by Greer for when he realized his attorney had not filed the appeal is somewhat inconsistent with the declarations provided by Greer's family members. Furthermore, in the memorandum in support of his § 2255 motion and his Traverse to the United States' request for dismissal, Greer states that he made one or maybe several calls to counsel's office at some point after being sentenced, but none of his calls were returned. (ECF No. 47 at 10, ECF No. 56 at 6). However, at the evidentiary hearing, Greer did not testify about any attempts he made to call Houck; instead, Greer stated that he waited patiently to hear from Houck until other inmates told him it was taking too long for an appeal, and at that time, he asked his family to call Houck. (ECF No. 80 at 15-16, 26). Additionally, at the hearing, Greer testified that he made a third request to Houck to file an appeal several days after sentencing while he was incarcerated at the Southern

Regional Jail; however, this third request was not mentioned anywhere in his previous filings. (ECF No. 80 at 17).

Greer's testimony and filings are also contradicted by the record. Greer asserts that he believed Houck had filed an appeal as requested and continued in his role as Greer's attorney, leading Greer to believe his best course of action was to remain patient and wait for the appellate process to conclude. (ECF No. 80 at 26). The record reflects, however, that in May 2015, Greer requested and received a copy of his docket sheet. (ECF Nos. 42, 43). Although Greer acknowledged both at his plea hearing and at the sentencing hearing that a notice of appeal must be filed within 14 days of sentencing, no notice of appeal appeared on the docket sheet. (ECF Nos. 51 at 24; 52 at 23). Accordingly, receipt of the docket sheet should have immediately informed Greer that his attorney had failed to file a notice of appeal. *See e.g. Carter*, 2013 WL 394717, at *5 (if petitioner had inquired with clerk of court, publicly available docket sheet would have revealed attorney's failure to file appeal). Nevertheless, rather than promptly contacting Houck by telephone or letter, Greer filed a *pro se* motion under 18 U.S.C. § 3582, seeking a sentence reduction and requesting that he be appointed an attorney. If Greer believed Houck continued to act as his attorney and an appeal was pending, then it made no sense for Greer to file a *pro se* motion and request the appointment of counsel. On the other hand, if Greer reviewed the docket sheet in May 2015 and realized that no appeal had been filed, he still had time to file a § 2255 motion. Either way, Greer's actions taken in response to receipt of the docket sheet significantly undermine the claim that he was laboring under the misapprehension that an appeal was pending and that Houck was still actively representing him. (ECF No. 44).

Finally, Greer's asserted reason for requesting an appeal is illogical and certainly

not supported by the record. At the plea hearing, the Court explained in detail that Greer was waiving his right to appeal, for all intents and purposes, by signing the plea agreement. Greer acknowledged his understanding of this consequence. At the sentencing hearing, Greer was asked directly if he had *any* objections to the findings contained in the PSR, which plainly included his designation as a career offender. (ECF No. 52 at 4). Greer stated that he had no objections, and further asserted that he was completely satisfied with Houck's representation. (*Id.*). Not once did Greer express on the record his disagreement with the career offender designation, his desire to challenge that designation, or his dissatisfaction with his sentence. To the contrary, in Greer's sentencing memorandum, Houck indicated that Greer felt a sentence between 151-188 months' imprisonment was acceptable. Notably, when Greer filed his *pro se* motion under § 3582(c)(2), he did not explicitly mention the career offender designation. (ECF No. 44). Although the Court explained in its September 2015 denial of the motion that Greer was not eligible for a sentence reduction, in part, because he was sentenced as a career offender, Greer still made no effort to contact his attorney personally, either by telephone or mail. In fact, the record indicates that Greer did nothing until almost 2 and 1/2 years later when he filed the instant § 2255 motion. Based on this record, Greer's current contention that he asked Houck to appeal the sentence *both before and after* it was entered—based entirely on his objection to the career offender designation—is simply not credible.

Respondent cites to an unpublished Fourth Circuit case, *United States v. Matthews*, 384 F. App'x 214 (4th Cir. 2010), in support of the argument that Greer's asserted reason for wishing to appeal his sentence is not credible. (ECF No. 82 at 6-7). In *Matthews* the Fourth Circuit reviewed a district court's decision to reject a claim similar

to that presented here. There, the petitioner pled guilty and was sentenced to 225 months in prison, saying at sentencing that he did not wish to appeal. *Matthews,* 384 F. App'x at 216. The petitioner later filed a § 2255 petition alleging that immediately after sentencing, he had instructed his attorney to file an appeal. *Id.* At an evidentiary hearing, three of the petitioner's sisters testified that the petitioner had requested an appeal and that they had attempted to reach the attorney to instruct him to appeal as well, but had been ignored by the attorney. The attorney testified that there had been no request for appeal, relying on notes he took during the course of representing the petitioner. *Id.* The district court rejected the petitioner's claims based, in part, on the fact that "it would have been illogical for [the petitioner] to seek to appeal based both on his nearly contemporaneous statement to the court that he did not wish to appeal and on the terms of his plea agreement." *Id.* at 216-17. The Fourth Circuit upheld the district court's decision, finding it was reasonable to have "credited an experienced and accomplished defense attorney who kept detailed written notes, rather than [the petitioner] and his sisters, who offered self-serving, illogical, and incomplete testimony." *Id.* at 217. The Fourth Circuit further agreed that the evidence supported counsel's account because the petitioner pled guilty and received a lower sentence than he would have absent the plea agreement, and because the petitioner stated in open court he did not wish to appeal shortly before, according to his account, he asked his attorney to appeal. *Id.* at 217-18.

The reasoning employed by the Fourth Circuit in *Matthews* is persuasive here. Greer agreed to plead guilty and waive his right to appeal except in limited circumstances. (ECF No. 25 at 4). He was instructed at the plea hearing that by pleading guilty he was effectively forfeiting his right to appeal. (ECF No. 51 at 22-23). Greer received a significant benefit by entering into the plea agreement. He was charged with two counts of knowingly

33

and intentionally distributing a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). (ECF No. 1). Each of these crimes carries a separate potential maximum penalty of 20 years in prison. *See* 21 U.S.C.A. § 841(b)(1)(C). Furthermore, pursuant to the plea agreement, the United States agreed not to file for an enhancement under 21 U.S.C. § 851. (ECF No. 25 at 1). Such an enhancement would have increased the potential maximum penalty for each count to 30 years in prison. *See* 21 U.S.C. § 841(b)(1)(C); *United States v. Belcher*, No. CRIM.A. 3:09-00158-0, 2010 WL 1490580, at *2 (S.D.W. Va. Apr. 13, 2010). By agreeing to plead guilty, Greer instead received a sentence of 155 months. (ECF No. 38).

In this case, as in *Matthews,* the testimony of Houck was supported by his extensive criminal law experience and by the detailed notes he maintained which do not reflect a request for an appeal. (ECF No. 79-1 at 22-23). Greer's testimony, by contrast, was self-serving, vague, and illogical. Although Respondent raised the issue of timeliness as a reason for dismissal of Greer's complaint prior to the evidentiary hearing, (ECF No. 55), Greer's testimony regarding when he learned of Houck's failure to file an appeal was extremely vague and nonspecific. (ECF No. 80 at 16). The testimony additionally seemed to be at odds with the timeline of events provided by Greer's family members (ECF Nos. 62, 63, 78-1). Furthermore, according to Greer, he told Houck he objected to his designation as a career offender and wished Houck to file an appeal on this issue, mere moments after stating he had no objection to this designation in open court. As in *Matthews,* this "nearly contemporaneous" reversal of position undermines Greer's assertion. *See* 384 F. App'x at 216. Finally, as noted above, Greer's testimony that he only belatedly learned Houck had not filed a notice of appeal is further undermined by Greer's receipt of his docket sheet in May 2015 which should have revealed to him that no appeal

had been filed. (ECF No. 43).

Viewing the record as a whole, the undersigned **FINDS** that, even if it is assumed that Greer's motion is not barred by the AEDPA's statute of limitations, Greer is unable to proceed as he has failed to demonstrate by a preponderance of the evidence that he is entitled to relief.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 46), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140

(1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Berger, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED**: September 17, 2019

Cheryl A. Eifert
United States Magistrate Judge